**Billy D. CARR, et al., Plaintiffs,**

**v.**

**The RCA RUBBER COMPANY, Defendant.**

**No. C84–795A.**

United States District Court, N.D. Ohio, E.D.

Feb. 25, 1985.

On Motion To Correct Judgment May 23, 1985.

Alan Ross, Asst. U.S. Atty., J. William Petro, U.S. Atty., Cleveland, Ohio, for plaintiffs.

Sidney C. Foster, Jr., Brouse & McDowell, Co., L.P.A., Akron, Ohio, for defendant.

## MEMORANDUM OPINION

DOWD, District Judge.

Plaintiffs, Billy D. Carr and Wendell E. Newman, filed the above-captioned case against defendant, the RCA Rubber Co., alleging a denial of reemployment following military service as is required pursuant to 38 U.S.C. § 2021. A trial was held in the above-captioned case on October 23, 1984. Premised upon the testimony of Richard T. Reiss, William Sloan, Billy D. Carr, Wendell Newman, and the exhibits admitted into evidence, the Court makes the following findings of fact and conclusions of law.

The primary issue before the Court, which is relevant to both plaintiffs' claims, is whether the RCA Rubber Company is the successor in interest to plaintiffs' former employer, Eclat. Eclat was in the business of manufacturing semi-pneumatic tires[1] at its sole manufacturing facility in Cuyahoga Falls, Ohio. Prior to 1973, Eclat, RCA, and a third company, Pulaski Rubber Co., were owned by the same group of shareholders. The companies shared the following common officers: board of directors, president, treasurer, assistant to the president, assistant secretary, vice president, and secretary of the companies. RCA furnished Eclat with administrative services such as personnel services, data processing services, billing and invoicing services, purchasing services and accounting services. Both plaintiffs obtained their positions at Eclat after interviewing RCA personnel.

1. Semi-pneumatic tires are small rubber tires used on consumer products such as baby strollers.

In January, 1973, Eclat merged with RCA through a stock transfer. The assets and liabilities of Eclat became the assets and liabilities of RCA. In 1974, Eclat's physical plant in Cuyahoga Falls, Ohio, was condemned for urban renewal. By April 18, 1975, Eclat's manufacturing facility was closed. In November, 1974, the local union representing employees at Eclat entered into an agreement with Eclat that its employees would be given the first opportunity for employment at RCA. Eclat employees beginning work at RCA were treated as "new hires" except for vacation pay purposes. Former Eclat employees beginning at RCA were not given credit for seniority accumulated at Eclat except for vacation purposes.

■ Upon consideration, the Court concludes that RCA Rubber Co. is the successor in interest to Eclat for the purposes of the Veterans Reemployment Act. In *Chaltry v. Ollie's Idea, Inc.*, 546 F.Supp. 44, 50 (W.D.Mich.1982), the Court reasoned as follows:

Although there is a dearth of legislative history on the significance of "successor in interest," the statute is to be construed liberally in favor of the veteran. *Coffy v. Republic Steel Corp.*, 447 U.S. 191, 196, 100 S.Ct. 2100, 2105, 65 L.Ed.2d 53 (1980). Moreover, the major purpose of the Act is to ensure that those who fulfill military commitments do not return to civilian life disadvantaged because of their service. The focus of the statutory remedy is on the plaintiff veteran's need for reemployment. For example, when a veteran seeks reemployment, it matters not that the defendant employer has hired another individual or that no vacancy is available. *See e.g., Kay v. General Cable Corp.*, 144 F.2d 653, 655 (3d Cir.1944).

Congress' primary concern was to ensure that "eligible veterans ... are promptly placed in a satisfactory job or job-training opportunity or receive some specific form of employment assistance." Conf.Rep. No. 1240, 93d Cong., 2d Sess.,

reprinted in [1974] U.S.Code Cong. & Ad. News 6336, 6343.

*Id.*

RCA manufactures rubber floors for transit cars, a different product than Eclat manufactured. Approximately fourteen Eclat employees went to work for RCA. Some of the Eclat employees went to work for Pulaski Rubber. RCA does not use Eclat's physical plant; however, it does use some of Eclat's machinery and equipment. Although Eclat and RCA operated under different names, at different locations, they were essentially the same company following the merger in 1973. It was a case of a company manufacturing similar, but different products at different locations. RCA obviously recognized Eclat employees as employees of RCA, or it would have had no obligation to provide Eclat employees with jobs at RCA, as such jobs became available. As is often the case when a manufacturer merges its plants, the seniority of the employees at the closing plant is not transferred to the plant which remains open to maintain industrial peace with the work force which is not transferring. The non-transferability of seniority does not outweigh the fact that Eclat and RCA had the same owners and shared the same upper level management. Accordingly, the Court concludes that the RCA Rubber Company is the successor in interest to Eclat.

## 1. *Billy D. Carr.*

Carr was employed at Eclat from October 12, 1973 until November 29, 1974, at which time he was laid off in connection with the closing of the Eclat Manufacturing facility in Cuyahoga Falls, Ohio. While employed at Eclat, Carr became a member of the local union representing Eclat employees. When Carr was laid off, he had recall rights pursuant to the memorandum of agreement entered into between the local union and management.

On December 3, 1975, Carr entered the United States Armed Services. On September 27, 1977, while Carr was in the Armed Services, RCA sent a letter to his last civilian residence address. The letter

informed Carr that a position had become available at RCA and requested him to respond if interested. The letter was returned to RCA unopened because Carr was no longer residing at the address to which it was mailed. William Sloan, the personnel officer in charge of implementing the memorandum of agreement at RCA, gave the notice to Carr's father, a long time employee of RCA. Carr's father informed Sloan that Carr was in the Armed Services. Carr was then removed from the list of Eclat employees eligible for a position at RCA. The notice sent to Carr was also sent to several other former Eclat employees. Even if Carr had responded that he was ready and willing to accept the position which became available in 1977, he would not have received the job because there were employees with more seniority than Carr still waiting to receive a position at RCA.

On December 2, 1979, Carr received an honorable discharge from the Armed Services. Because of accumulated leave, Carr was actually released at the end of September, 1979. On October 19, 1979, Carr wrote to RCA requesting reemployment. On October 29, 1979, RCA responded to Carr that since he had not responded to the September 1977 letter, Carr was removed from the eligibility list.

Carr eventually requested the U.S. Labor Department to aid him in obtaining reemployment. By May of 1978, RCA was offering positions to former Eclat employees with less seniority than Carr; consequently, Carr was eligible for employment with RCA when he was discharged from the service in 1979. In January, 1980, RCA offered Carr a position. Carr commenced employment with RCA on February 4, 1980. However, Carr did not waive any claim for back pay. Carr was not credited with any seniority he accumulated at Eclat for the purposes of vacation pay at RCA. The Labor Department suggested Carr

pursue the back pay through the local union at RCA.

In March, 1980, Carr filed a grievance with the local union representing RCA's employees. Through the grievance Carr sought to receive the benefits given to other former Eclat employees. The grievance was denied because the rights Carr was attempting to enforce were not part of the collective bargaining agreement in effect with RCA's employees.

■ The Court concludes Carr had reemployment rights with RCA upon his honorable discharge from the Armed Services. Carr received an honorable discharge; he made an application for reemployment with RCA within 90 days of his discharge;[2] and, RCA's circumstances did not change so as to make it impossible or unreasonable to reemploy Carr.

■ Carr asserts he is entitled to back pay for the period he was not reemployed by RCA. Carr asserts he is entitled to back pay from October, 1979, when he requested reemployment. Although Carr was on vacation leave in October, 1979, he was not honorably discharged until December 2, 1979. Pursuant to 38 U.S.C. § 2021, Carr was not entitled to reemployment until he was honorably discharged.

Carr's rate of compensation when he commenced employment with RCA in 1980 was $6.29 per hour. Considering Carr was entitled to reemployment from the date of his honorable discharge on December 2, 1979, he is entitled to nine weeks of back pay. Carr's back pay is calculated as follows:

6.29 (hourly rate) × 40 hours × 9 weeks = $2,264.40

■ The parties agree that unemployment compensation, in the amount of $110.00 per week, should be deducted from any award of back pay awarded to Carr. Nine weeks of unemployment compensation at the rate $110.00 per week is equal

---

**2.** Carr actually applied for a position with RCA before his honorable discharge became effective because of his accumulated vacation leave.

to $990.00. Consequently, Carr is entitled to back pay calculated as follows:

| | |
|---|---|
| $2,264.40 | (Gross back pay) |
| − 990.00 | (Unemployment compensation) |
| $1,274.40 | |

■ If Carr had been credited with his Eclat seniority for vacation purposes, as was provided in the memorandum of agreement, Carr would have received two weeks vacation pay in 1980, and an extra week vacation pay in 1982, 1983, and 1984.[3] In 1980, Carr's vacation pay would have been calculated at the rate of $6.89 per hour. Carr's vacation pay for 1980 is calculated as follows:

6.89 (hourly rate) × 80 hours = $551.20

Carr's vacation pay for 1982, 1983 and 1984 is calculated at a rate of $7.68 per hour. Carr's vacation pay which he was denied for 1982, 1983, and 1984 is calculated as follows:

7.69 per hour (hourly rate) × 120 hours = $922.80.

Consequently, Carr's total damages are calculated as follows:

| | |
|---|---|
| $1,274.40 | (back pay) |
| 551.20 | (vacation pay 1980) |
| 922.80 | (vacation pay 1982, 1983, 1984) |
| $2,748.40 | (Total) |

Accordingly, judgment is awarded in favor of plaintiff Carr and against RCA Rubber Company in the amount of $2,748.40.[4]

### 2. Wendell E. Newman.

Newman commenced employment at Eclat August 5, 1974. Newman accepted the position with the understanding that it was only temporary because Eclat would soon be ceasing operations. Eclat needed employees during the period it was winding down operations because many of its employees had transferred to Pulaski or RCA.

On November 15, 1974, Newman's employment with Eclat was terminated in connection with the gradual termination of operations at the Eclat facility in Cuyahoga Falls, Ohio. In April 1978, RCA offered Newman a position. In May 1978, Newman informed Mr. DeWitt of RCA's personnel department that he wished to work for RCA but he had an upcoming reserve obligation with the United States Armed Forces.

Newman attempted to get his reserve obligation postponed so that he could commence employment at RCA. Mr. DeWitt of RCA attempted to aid Newman in getting the reserve obligation postponed by writing a letter, directed to whom it may concern, stating that Wendell Newman has recall rights with RCA but must return now or lose his recall rights. Newman's attempt to have his reserve obligations postponed was unsuccessful.

At approximately the same time he was attempting to obtain a job with RCA, Newman commenced full time employment at the American Standard Company in Alliance, Ohio. Upon completing his reserve obligation August, 1978, Newman attempted to gain employment with RCA. RCA declined to employ Newman and he exercised his reemployment rights with American Standard.

■ The Court concludes Newman did not have reemployment rights with RCA. The Veterans Reemployment Act specifically excludes temporary employees. 38 U.S.C. § 2021(a). Newman understood when he was hired by Eclat that he was only a temporary employee and his employment would be terminated when Eclat closed. Although RCA was willing to hire Newman before he commenced his reserve obligation, he never in fact commenced employment with RCA. DeWitt did mention

---

**3.** Carr also asserts he is entitled to two weeks vacation pay for 1979. However, because Carr could not have commenced employment until December, 1979, he was not entitled to vacation pay for that year.

**4.** Carr also requested supplemental pay in the amount of $720.00. He would have received the supplemental pay during a six week layoff in 1980 if he had been credited with one year of seniority. However, Carr's Eclat seniority was only credited for vacation purposes at RCA, pursuant to the memorandum of understanding.

in his letter, directed to whom it may concern, that Newman had recall rights; however, DeWitt's letter was simply an attempt to aid Newman in getting his reserve obligation deferred.

Furthermore, Newman could not have been a permanent employee of two employers. He worked for American Standard prior to commencing his reserve obligation and he invoked his reemployment rights to work at American Standard upon his return from the reserves. Following his discharge, Newman returned to precisely the same employment and under the same conditions he had prior to commencing his reserve obligation. If Newman had reemployment rights, as he testified, with American Standard, he could not also have reemployment rights with RCA. Accordingly, the Court enters judgment in favor of RCA and against Newman.

## CONCLUSION

Pursuant to the reasons set forth above, the Court finds plaintiff Billy D. Carr was entitled to be reemployed by defendant RCA Rubber Company upon his honorable discharge from the U.S. Armed Services on December 2, 1979 and compensatory damages are awarded in favor of Carr and against RCA Rubber in the amount of $2,748.40. The Court finds in favor of defendant RCA Rubber Co. on all claims of plaintiff Wendell E. Newman.

## JUDGMENT ENTRY

Pursuant to the reasons set forth in the Memorandum Opinion filed contemporaneously with this Judgment Entry, IT IS HEREBY ORDERED, ADJUDGED, and DECREED that judgment is entered in favor of plaintiff Billy D. Carr and against defendant RCA Rubber Company, on Carr's claims pursuant to 38 U.S.C. § 2021, in the amount of $2,748.40. Judgment is entered in favor of defendant RCA Rubber Co. on all claims of plaintiff Wendell E. Newman. All parties are to bear their own costs.

## ORDER

## ON MOTION TO CORRECT JUDGMENT

Before the Court is plaintiff Billy D. Carr's motion to correct judgment pursuant to Fed.R.Civ.P. 60(a). In a memorandum opinion and judgment entry of February 25, 1985, the Court held that plaintiff Carr had reemployment rights with defendant RCA Rubber Company pursuant to the Veterans Reemployment Act, 38 U.S.C. § 2021. The Court held that RCA should have reemployed Carr when he received his honorable discharge on December 2, 1979. However, the Court did not specifically state that December 2, 1979 is Carr's seniority date with RCA. Carr and RCA agree that this Court must determine Carr's seniority date, because such date has an effect on Carr's rights as an RCA employee.

Under normal circumstances, a returning veteran maintains the same seniority date he had when he left the employment in question. The Supreme Court held that a returning veteran "does not step back on the seniority escalator at the point he stepped off. He steps back on at the precise point he would have occupied had he kept his position continuously...." *Coffy v. Republic Steel Corp.*, 447 U.S. 191, 196, 100 S.Ct. 2100, 2104, 65 L.Ed.2d 53 (1980). However, in the action before the Court, Carr's employer, Eclat, ceased operations and all employees were laid off. The employees were given recall rights at RCA, the successor in interest to Eclat, but they received a new date of seniority upon commencing employment at RCA, except for vacation pay purposes.

Consequently, to place Carr back on the seniority escalator at the place he occupied if he had not entered military service, Carr's seniority date would have to be the date he would have been recalled to RCA if he had not been in the military service. The date Carr would have been recalled to RCA is unknown; however, it is undisputed that by May 16, 1978, RCA was offering positions to former Eclat employees with

less seniority than Carr. Consequently, if Carr had not been in the armed services, he would have been recalled by RCA by May 16, 1978.

Accordingly, the Court holds that plaintiff Billy D. Carr's seniority date with the RCA Rubber Company is May 16, 1978.

IT IS SO ORDERED.